IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Simon Montalvo, | : | Case No. 3:04 CV 07778 |
| Plaintiff, | : | |
| v. | : | MAGISTRATE'S REPORT AND RECOMMENDATION |
| | : | |
| General Motors Corporation, | | |
| Defendant. | : | |

This employment discrimination action, filed pursuant to Title I of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et. seq.*, and Title VII of the Civil Rights Act of 1964 as amended under 42 U. S. C. § 2000e-5, was referred to the undersigned Magistrate for report and recommendation. Pending is Defendant's unopposed Motion for Summary Judgment (Docket No. 25) and supporting Memorandum (Docket No. 26). For the reasons that follow, the Magistrate recommends that Defendant's Motion for Summary Judgment be granted.

**FACTUAL BACKGROUND**

Plaintiff resides in Fort Wayne, Indiana (Docket No. 1, ¶ 2). Defendant is a corporation operating a production facility in Defiance, Ohio (Docket No. 1, ¶ 5).

Plaintiff contends that Defendant has employed him as an electrician since December 19, 1994

(Docket No. 1, ¶ 10). He suffered an injury in the Defiance facility in May 1999 for which he received worker compensation benefits (Docket No. 1, ¶s 10, 11). Plaintiff maintained his employment with Defendant; however, the company physician imposed certain medical restrictions, prohibiting squatting, kneeling, climbing stairs and ladders and walking/standing more than four hours daily (Docket No. 1, ¶12). At that time, Plaintiff was required to work twelve-hour shifts and overtime (Docket No. 1, ¶14). When Plaintiff volunteered to work during the Christmas shutdown of 2002, his request was denied (Docket No. 1, ¶ 16). Upset about management's decision denying his request to work during the shutdown, Plaintiff, without consent from management, left the workplace for the day. When he returned on the following day, Plaintiff was advised that his unauthorized departure from the workplace constituted a "voluntarily quit" (Docket No. 1, ¶ 20, 21). With assistance from his union representative, Plaintiff was reinstated (Docket No. 1, ¶ 21).

Plaintiff filed a grievance, and a hearing was conducted regarding the denial of overtime to Plaintiff during the Christmas shutdown (Docket No. 1, ¶ 22). During the grievance hearing, Defendant admitted that commencing Christmas 2002, Plaintiff's medical restrictions were enforced (Docket No.1, ¶ 22). Plaintiff was permitted to work during the weekend of January 18-20, 2003. Upon completion of the weekend work, Plaintiff was ordered to be examined by the company physician. The company physician ordered Plaintiff to observe a 40-hour per week work restriction thereafter (Docket No. 1¶s, 23, 24). Approximately one month later, Plaintiff refused an order to submit to a medical examination by the company physician. Consequently, Plaintiff was charged with failure to follow an order, suspended for the rest of his shift and one day and required to "go on sick leave" (Docket No. 1, ¶s 24, 25, 26).

Plaintiff filed two charges for discrimination and retaliation with the Ohio Civil Rights

Commission (OCRC) and Equal Employment Opportunity Commission (EEOC) (Docket No. 1, ¶ 28). A Notification of the Right to Sue was received regarding the discrimination charge on or about September 26, 2004 (Docket No. 24, ¶ 2(b)). Plaintiff received a right to sue letter from the EEOC on or about August 12, 2005 on his retaliation claim (Docket No. 24, ¶ 2(e)).

On December 23, 2004, Plaintiff filed a timely complaint in this Court alleging wrongful discharge, retaliation, failure to make reasonable accommodations and deprivation of due process (Docket No. 1). Pending is Defendant's unopposed Motion for Summary Judgment (Docket No. 25).

## SUMMARY JUDGMENT STANDARD

The summary judgment procedure is designed to dispose of cases wherein there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. See FED. R. CIV. P. 56. Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, with the affidavits if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56©); *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995) (*citing LaPointe v UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993)).

The moving party bears the initial burden of establishing an absence of evidence to support the non-moving party's case. *Celotex Corporation v. Catrett*, 106 S. Ct. 2548, 2552-2553 (1986). In the face of Defendant's properly supported Motion for Summary Judgment, the Plaintiff cannot rest on his or her allegations to get to the jury without significant probative evidence tending to support the complaint. *Anderson v. Liberty Lobby, Incorporated*, 106 S. Ct. 2505, 2510 (1986) (*citing First National Bank of Arizona v. Cities Services Company*, 88 S. Ct. 1575, 1593 (1968)). The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which

a jury could reasonably find for the plaintiff. *Id.* at 2512.

To oppose a motion for summary judgment successfully, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corporation*, 106 S. Ct. 1348, 1355 (1986). In determining if the facts are material, the court must look to the substantive law. The evidence of the non-movant is then taken as true and all justiciable inferences are drawn in his or her favor. *Anderson*, 106 S. Ct. at 2513 (*citing Addickes v. S.H. Kress & Co.*, 90 S. Ct. 1598, 1609-1610 (1970)). The Court must refrain from resolving conflicts in the evidence or making credibility determinations. *Id*. If, after deciding, the dispute about a material fact is genuine, summary judgment should be denied.

## **DISCUSSION**

It is undisputed that Defendant regards Plaintiff as having an impairment for which reasonable accommodations have been made. Plaintiff contends that Defendant has used such characterization to discriminate against him. Plaintiff claims specifically that Defendant has deprived Plaintiff of overtime, discharged him, suspended him from work, reassigned him to a position of lower status and taken adverse action against him for exercising his federally protected rights. In Plaintiff's view, such acts are indicative of claims for hostile work environment and retaliation. Defendant contends that Plaintiff was neither terminated nor subjected to adverse employment action of any kind, that Defendant's actions were legitimate and non-discriminatory and there is no basis for Plaintiff's retaliation and harassment claims. *Hostile Work Environment*

Plaintiff argues that Defendant and its employees engaged in discriminatory conduct that created a hostile work environment. Defendant contends that the conduct of which Plaintiff complains was neither severe nor pervasive enough to create a hostile work environment.

The Sixth Circuit acknowledges that there is a cause of action under ADA for a hostile work environment. *Keever v. City of Middletown,* 145 F. 809, 813 (6th Cir. 1998) *cert. denied,* 119 S. Ct. 407 (1998); *Denczak v. Ford Motor* Company, 407 F. Supp. 2d 880, 891 (N. D. Ohio 2005).  The standard for such claims tracks the standard for hostile work environment sexual harassment claims. *Denczak*, at 897 (*citing Coulson v. The Goodyear Tire & Rubber Company*, 31 Fed. Appx. 851, 858 (6th Cir. 2002)).  To determine if a hostile work environment exists, the court must look to the totality of the circumstances. *Id.* (*citing Faragher v. City of Boca Raton*, 118 S. Ct. 2275, 2283 (1998)).  This includes consideration of the frequency and severity of the alleged conduct, whether it is physically threatening or humiliating or a mere offensive utterance and whether it interferes with an employee's work performance. *Id*. (*citing Harris v. Forklift Systems*, 114 S. Ct. 367, 371 (1993)).  The accompanying harassment must be sufficiently severe or pervasive enough that a reasonable person would find hostile and abusive and the victim must subjectively regard the environment as hostile or abusive. *Id.* at 891-892.  Simple teasing, offhand comments and isolated incidents, unless extremely serious, do not constitute discriminatory changes in the terms and conditions of employment. *Id.* (*citing Faragher, supra*).  In the Sixth Circuit, harassment jurisprudence requires that the court distinguish between harassment and discriminatory harassment. *Bowman v. Shawnee State University*, 220 F.3d 456, 464 (6th Cir. 2000).  Thus, an employee must demonstrate that the allegedly harassing conduct was motivated by a bias toward the employee's disability. *Faragher*, 118 S. Ct. at 2277.

This Court is able to find only a few instances of conduct alleged that could even approach harassment on the basis of disability by management.  The allegations fall well short of even presenting a genuine issue of material fact regarding whether Plaintiff was subjected to a hostile work environment on the basis of his disability.

5

Plaintiff contends that management made snide remarks such as "I'll kick your good knee so that you will be balanced" (Docket No. 30, p. 28), comments ridiculing the way Plaintiff walked (Docket No. 30, p. 28), and no comments when Plaintiff offered a hello (Docket No. 30, pp. 28-29). Perhaps the strongest instances of potentially harassing conduct include Greg Thomas' assignments to work in the warehouse for a couple of weeks during January and February (Docket No. 30, Exhibit 1, p. 28) and then to read safe job procedures from July through September (Docket No. 30, Exhibit 1, p. 35) and the termination of his job as an electrician (Docket No. 30, Exhibit 1, p. 36). Plaintiff suspects that Greg Thomas ordered his termination as an electrician on March 3, 2003 (Docket No. 20, Exhibit 1, p. 36).

Plaintiff contends that Jeff Bell's demeanor and the method in which he spoke to Plaintiff are indicative of his animosity toward Plaintiff (Docket No. 30, Exhibit 1, pp. 41-42). In 2000, Jeff Bell denied Plaintiff's request to change shifts despite his seniority (Docket No. 30, Exhibit 1, p. 40). Plaintiff contends that Jeff Bell removed Plaintiff from the overtime schedules in December 2002 and October 2004 under the pretense that working overtime would violate the medical restrictions (Docket No. 30, Exhibit 1, p. 38). Plaintiff recalled a conversation in which Jeff Bell publicly questioned his competence (Docket No. 30, Exhibit 1, p. 42).

When Plaintiff was transferred to third shift, Greg Thomas claimed that "I'm going to hire someone to watch you, and if you fall asleep or anything your ass is out of here" (Docket No. 30, Exhibit 1, p. 43). Rob Turner "wrote him up" several times while on third shift (Docket No. 30, Exhibit 1, p. 43).

Engineers Doug Wellinger and Nathan Amaroso ridiculed him for his condition and implied that he may have a mental disability (Docket No. 30, Exhibit 1, pp. 44, 46). Larry Rowe warned Plaintiff that he was prohibited from filing a grievance for purposes of obtaining back pay for lost overtime (Docket

6

No. 30, Exhibit 1, p. 47).

When walking in front, Plaintiff's co-workers made comments such as "Let me stick this boot up there, that will make you go faster" and called him "Speedy" (Docket No.30, Exhibit 1, p. 49). When he had a beard, co-workers considered him a terrorist, referred to him as "Osimon Ben Laden," and compared him to Sadam Hussain (Docket No. 30, Exhibit 1, pp. 52-53).

Plaintiff admits that "everyone" made such comments intermittently (Docket No. 30, p. 49). The comments and references to him being a terrorist were because of his facial hair (Docket No. 30, Exhibit 1, p. 50). Plaintiff was never privy to these comments; they were never directed "at his face" (Docket No. 30, Exhibit 1, p. 51). The single incident of explicit reference to kicking Plaintiff's knee is not sufficiently severe to constitute harassment under Sixth Circuit precedent. These words and expressions from management and co-workers reflect a skepticism regarding Plaintiff's ability to perform his work given the condition of his knee. However, the comments overall are not sufficiently severe or pervasive to persuade a reasonable jury that such comments are anything more than teasing.

Plaintiff's job position required overtime; however, an order from management to work overtime would have violated Plaintiff's medical restrictions (Docket No. 30, Exhibit 1, pp. 59-60). By his own admission, Plaintiff contends that Greg Bell's refusal to schedule overtime during the shutdown and his assignment to the warehouse were not pretextual but in compliance with the conditions of Plaintiff's medical restrictions (Docket No. 30, Exhibit 1, p. 60).

Plaintiff's involuntary separation from his employer was the result of his decision to leave because he was upset (Docket No. 30, Exhibit 1, p. 64). Although he advised the clerk and Mr. Bell of his departure, he did not obtain permission from management to leave (Docket No. 30, Exhibit 1, p. 63). Plaintiff was immediately allowed to return to work and he was not deprived of any pay or benefits

7

(Docket No. 30, Exhibit 1, p. 65). Clearly, there is no basis from which a reasonable jury could determine that Defendant was responsible for Plaintiff's decision to leave work.

Plaintiff was escorted from the work premises because he refused to undergo an annual physical examination by the company physician (Docket No. 30, Exhibit 1, p. 76). However, Plaintiff was scheduled to leave early that day to attend a wedding, so he was not penalized for leaving early (Docket No. 30, Exhibit 1, p. 78). The disciplinary proceeding against Plaintiff was instituted for his failure to follow a direct order (Docket No. 30, Exhibit 1, p. 78). There is no correlation in the record between his failure to undergo an annual examination and his disability (Docket No. 30, Exhibit 1, p. 75).

Finally, Plaintiff admits that he was disciplined for (1) reading a paperback book during his attendance at the ADAPT Program and (2) combining, without authorization, his lunch time and third break time to be used at the end of the day (Docket No. 30, Exhibit 1, pp. 86, 89). Again, a reasonable jury would find it more probable that the imposition of a disciplinary procedure against Plaintiff was directly related to his behavior, not his disability.

When considering the totality of the actions by Plaintiff's co-workers and supervisors, the evidence does not rise to the level of Sixth Circuit standards that require a workplace permeated with disciplinary intimidation, insult or ridicule that is so severe or pervasive as to alter the conditions of employment or create an abusive working environment. Accordingly, the Magistrate recommends that Defendant's summary judgment motion with regard to Plaintiff's ADA hostile work environment claim be granted.

*Retaliation*

Plaintiff also alleges that Defendant discharged him in retaliation for enforcing his rights to file a grievance or bring this lawsuit. The ADA forbids retaliation for any action protected by the ADA. 42

U.S.C. § 12203(a) (2005). To succeed on a retaliation claim, a plaintiff must show (1) that he or she engaged in protected activity, (2) that the defendant was aware of the protected activity, (3) that the plaintiff suffered an adverse employment action and (4) that a causal connection existed between the protected activity and the adverse action. *Walborn v. Erie County Care Facility,* 150 F.3d 584, 588-89 (6th Cir. 1998). A retaliation claim may be established directly, by persuading the court that a discriminatory reason more likely than not caused the adverse employment action, or indirectly, by persuading the court that the employer's asserted reason for an adverse action is pretextual. *Texas Department of Community Affairs v. Burdine,* 101 S. Ct. 1089, 1095 (1981).

Not every action that the employee dislikes is an "adverse employment action." *Kocsis v. Multi-Care Management*, 97 F.3d 876, 885 (6th Cir. 1996). The employer's conduct must effect a "materially adverse change in the terms and conditions of employment." *Id*. Reassignments do not constitute adverse employment actions without disadvantageous changes in hours or salary. *Id.* (*citing Yates v. Avco Corporation*, 819 F.2d 630, 638 (6th Cir. 1987)). More generally, courts look for at least a termination of employment, a demotion in wage, salary or job title, a loss of benefits, or a decrease in responsibilities. *Id.* (*citing Crady v. Liberty National Bank & Trust Company*, 993 F.2d 132, 136 (7th Cir. 1993)).

Even if Defendant intended the job reassignment to penalize Plaintiff for filing grievances and/or this lawsuit, Plaintiff did not suffer any disadvantages. His salary and benefits remained the same. In fact, Plaintiff claims that all he lost as a result of these incidents was the denial of overtime, dignity, respect and a "happy state of affairs" (Docket No. 30, Exhibit 1, pp. 111, 112). This atmosphere is not close to the adverse action required to constitute retaliation. Accordingly, the Magistrate recommends that the Defendant's summary judgment motion with respect to Plaintiff's claim for retaliation be

9

granted.

## **CONCLUSION**

For the foregoing reasons, the Magistrate recommends that Defendant's Motion for Summary Judgment be granted.

>/s/Vernelis K. Armstrong
>Vernelis K. Armstrong
>United States Magistrate Judge

Notice

Please take notice that as of this date the Magistrate's Report and Recommendation attached hereto has been filed.

Please be advised that, pursuant to Rule 72.3(b) of the Local Rules for this district, the parties have ten (10) days after being served in which to file objections to said Report and Recommendation. A party desiring to respond to an objection must do so within ten (10) days after the objection has been served.

Please be further advised that the Sixth Circuit Court of Appeals, in *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) held that failure to file a timely objection to a Magistrate's Report and Recommendation foreclosed appeal to the Court of Appeals. In *Thomas v. Arn*, 106 S. Ct. 466 (1985), the Supreme Court upheld that authority of the Court of Appeals to condition the right of appeal on the filing of timely objections to a Report and Recommendation.